Jonathan W. CHUDSON, Petitioner,

v.

## ENVIRONMENTAL PROTECTION AGENCY, Respondent.

No. 93–3085.

United States Court of Appeals, Federal Circuit.

Feb. 22, 1994.

Thomas M. Devine, Legal Director, Government Accountability Project, of Washington, D.C., argued for petitioner.

Sheryl L. Floyd, Senior Trial Counsel, Commercial Litigation Branch, Department of Justice, of Washington, D.C., argued for respondent. With her on the brief were Frank W. Hunger, Assistant Attorney General and David M. Cohen, Director. Also on the brief was David P. Guerrero, Office of General Counsel, Environmental Protection Agency, of Washington, D.C. Of counsel was Joanne M. Hogan, Environmental Protection Agency.

Before NEWMAN, ARCHER, and LOURIE, Circuit Judges.

## DECISION

ARCHER, Circuit Judge.

Jonathan W. Chudson petitions for review of the June 17, 1992 initial decision (No. DC0330920437–I–1) of the Merit Systems Protection Board (board) sustaining the action of the Environmental Protection Agency (EPA or agency) in not selecting Chudson from the Reemployment Priority List for the newly created position of Supervisory Criminal Investigator. The initial decision of the board became final on November 2, 1992

when the board denied reivew 55 M.S.P.R. 367. We vacate and remand.

## DISCUSSION

### I.

Chudson was employed at EPA until October 3, 1990, when he was separated from the agency by the terms of a confidential settlement agreement. Pursuant to this settlement and 5 C.F.R. § 330.201, Chudson was placed on the agency's Reemployment Priority List (RPL).

In October 1991, Earl E. Devaney, formerly an employee at the Department of Treasury, was appointed Director of the Office of Criminal Enforcement at EPA. As Director, Devaney was charged with overseeing all of the criminal enforcement activities for EPA. Devaney had approval to create the position of Supervisory Criminal Investigator. In December 1991, he asked a former colleague at Treasury, James M. Catlett, if he would be interested in the position. In January of 1992, the GM–14 position was formally established and Catlett, who was already a Supervisory Criminal Investigator at Treasury, submitted the formal paperwork to Devaney to apply for the position. Devaney then sent the paperwork to the EPA personnel office in order to arrange for Catlett's transfer.

The EPA personnel office informed Devaney that Catlett's transfer could not be processed because there was a candidate, Chudson, on the RPL who must be considered for the position. Devaney obtained Chudson's Application for Federal Employment, form SF–171, and interviewed him on January 28, 1992. Chudson presented an updated SF–171 and letters of recommendation at the interview.

Following the interview, Devaney prepared a memorandum to the personnel department explaining the reasons why the selection of Chudson for the position would present an "undue interruption" to the Office of Criminal Enforcement and the agency. Catlett was then hired and a letter was sent to Chudson explaining that he was not selected for the position because of his "lack of experience in management, oversight of training, and development and implementation of broad national criminal investigative policies." Chudson appealed the agency's decision to the board on the grounds that the failure to select him was a violation of his reemployment priority rights and that the agency action had been conducted in reprisal for protected whistleblowing activity.

The board affirmed EPA's decision. The board found that EPA established that Chudson's selection would have caused an "undue interruption" within the meaning of 5 C.F.R. § 330.207(d) and that Chudson failed to prove EPA's action was taken in reprisal for Chudson's whistleblowing activity. Chudson timely appealed the decision of the board.

### II.

Under the narrow standard of review granted this court by statute, a decision of the board must be affirmed unless it is determined to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, obtained without procedures required by law, rule, or regulation having been followed, or if the decision is unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988).

Chudson argues, as he did before the board, that the "undue interruption" exception to the rule that those on the RPL will be considered for open positions does not apply to vacant positions. We do not agree that the RPL regulations, 5 C.F.R. §§ 330.201–.209, preclude applying this exception to vacant positions.

Section 330.201(a) requires an agency "to establish and maintain a reemployment priority list (RPL) for each commuting area in which it separates eligible employees due to reduction in force or compensable injury...." 5 C.F.R. § 330.201(a) (1993). Employees eligible to be placed on the RPL include employees separated from employment due to a reduction in force (RIF) (*i.e.*, employees who have not been placed in another position pursuant to the RIF rules)[1],

---

1. If there are no available positions for which the separated employee is either qualified or eligible, the employee is then eligible to be entered on the RPL and placement is then governed by the RPL

*see* 5 C.F.R. § 330.203, and employees separated because of a compensable injury or disability, *see* 5 C.F.R. § 330.204. For an employee who has been separated due to a RIF, the RPL regulations provide that the employee is "entitled to consideration for positions ... for which [the employee is] qualified and available that are at no higher grade (or equivalent) and have no greater promotion potential than the position from which the employee was ... separated." 5 C.F.R. § 330.206(a)(1) (1993). If there is a qualified employee on the RPL, an agency may appoint an individual who is not on the RPL "only when necessary to obtain an employee for duties that cannot be taken over *without undue interruption* to the agency by an individual who is on the RPL or has higher standing [on the RPL] than the one appointed." 5 C.F.R. § 330.207(d) (1993) (emphasis added).

Chudson argues that the "undue interruption" exception is inapplicable to vacant positions, like the Supervisory Criminal Investigator position established by Devaney, because the agency would normally expect an interruption in the assigned functions of the position due to the vacancy. In these circumstances Chudson says there can be no interruption that is "undue." This is particularly true, Chudson argues, when the position is newly created because there can be no "interruption" when performance of the position has never started. Chudson concludes that the "undue interruption" exception should not apply here because the Supervisory Criminal Investigator position was newly created and vacant. Thus, there can be no ongoing activities to interrupt.

In support of his argument, Chudson cites a line of board cases holding that the "undue

interruption" provision recited in the RIF regulations is applicable only to the exercise of RIF assignment rights involving displacement, not to the filling of vacant positions. *See, e.g., Jamison v. Department of Transportation,* 20 M.S.P.R. 513, 516–17 (1984). The RIF regulations, 5 C.F.R. Part 351, provide that an employee who is released from their position due to a RIF may be qualified for reassignment to a new position if, *inter alia,* the employee "[c]learly demonstrates on the basis of overall background, including recency of experience, a positive ability to successfully perform all critical elements of the specific position upon entry into it, *without undue interruption* to that activity and without any loss of productivity beyond that normally expected in the orientation of any new but fully qualified employee." 5 C.F.R. § 351.702(a)(4) (1993) (emphasis added). *Jamison* and its progeny[2] have held that the RIF "undue interruption" provision does not apply when filling a vacant provision.[3] Chudson contends the RIF "undue interruption" provision as interpreted by *Jamison* applies as well to RPL actions because the chapter on RPL rules in the Office of Personnel Management's (OPM) Federal Personnel Manual (FPM) defines "undue interruption" by a cross-reference to the RIF chapter. *See* Federal Personnel Manual, ch. 330, subch. 1, § 1–14 (1991).

We disagree with Chudson's interpretation of the RPL regulations. Nowhere in the regulations does it say the "undue interruption" exception does not apply to vacant positions. Indeed, as noted by the board, such an interpretation in the context of RPL actions would nullify the entire exception because the RPL is used *exclusively* for filling

regulations. *See generally Carey v. Merit Systems Protection Board,* 768 F.2d 1338 (Fed.Cir.1985); *Horner v. Department of the Navy,* 41 M.S.P.R. 20 (1989).

**2.** *See, e.g., Lewellen v. Department of the Air Force,* 25 M.S.P.R. 525, 527 (1985); *Mazzola v. Department of Labor,* 25 M.S.P.R. 682, 686 (1985).

**3.** *Jamison* did not interpret the present RIF regulations, but rather interpreted the regulations as they read in 1983, which stated an employee was qualified if the employee "[h]as the capacity

adaptability, and any special skills needed to satisfactorily perform the duties and responsibilities of the position without undue interruption to the activity." 5 C.F.R. § 351.701(a)(4) (1983). The RIF regulations were amended in late 1983. The amendments moved the provisions regarding qualifications for assignment rights from subsection 701 to subsection 702 and amended the language as set out in the text of the opinion. The Office of Personnel Management (OPM) stated it made the changes "to assure that employees are fully qualified to do the job into which they bump or retreat." 48 Fed.Reg. 49463 (1983).

vacant positions. There would be no reason to include the undue interruption exception in the RPL regulations if the exception could never apply.

Chudson's argument regarding the ·*Jamison* case is also unpersuasive. First, the board decision in that case is not binding on this court. Second, that case involved interpretation of the RIF regulations, not the RPL regulations. OPM may have incorporated the definition of the "undue interruption" from the RIF chapter [4] in the FPM, but this does not mean it adopted the board's decisions as to when this definition applies.

Finally, Chudson's argument gives no recognition to the fact that a vacant position may have important agency functions assigned to it. Similarly, a position that is vacant because it is newly created may also encompass important activities as in this case where certain functions formerly performed in a regional office had been reassigned to the newly created Supervisory Criminal Investigator position in the Washington D.C. headquarters. An undue interruption to the agency may well occur if the performance of important functions of a vacant position (including newly created position) would be delayed because of deficiencies in the skills of an RPL candidate as compared to a more qualified candidate not on the list.

■ We are, therefore, convinced that the board properly interpreted the RPL regulations in holding that the "undue interruption" exception in 5 C.F.R. § 330.207(d) applies in RPL actions with respect to vacant (including newly created) positions.[5]

### III.

■ Chudson also argues that the administrative judge (AJ) improperly excluded nine of his witnesses. We review the board's decision to exclude witnesses under an abuse of discretion standard. *Davis v. Office of Personnel Management,* 918 F.2d 944, 946 (Fed.Cir.1990).[6]

■ Among the nine excluded witnesses were John W. West, the Acting Director of the Criminal Investigation Division of the EPA at the time of Mr. Chudson's non-selection, and Zandra I. Kern, Team Leader of the Headquarters Operations and Client Services Division of EPA. West was offered to testify "regarding the timing and circumstances of his request for the lateral transfer of someone other than [Chudson] to the ... position in question and specifically that he requested this action prior to the interview of [Chudson] for the same position." Kern was offered to testify regarding her role as the personnel officer at the time of Chudson's non-selection and "the guidance that she gave to Earl Devaney ... regarding how Devaney could avoid hiring [Chudson]." Chudson offered both witnesses to establish that the agency's undue interruption determination was a "ruse to cover-up the illegal preselection" of Catlett for the position in question.

Chudson's claim of a "ruse" or sham selection process may not be without foundation. He alleges that he met the minimum qualifications for the position and that he was, in fact, more qualified than Catlett in some respects because Chudson was familiar with EPA law. There is no dispute that Devaney and Catlett were colleagues at Treasury and there is no evidence that Devaney considered any candidate other than Catlett until he was required by regulation to consider Chudson. In fact, Devaney discussed the position with

---

**4.** FPM Supplement 351–1, chapter S2–lv (1989) provides:

> *Undue interruption* means a degree of interruption that would prevent the completion of required work within the allowable limits of time and quality, taking into account the pressures of priorities, deadlines, and other demands. A work program probably would be unduly interrupted if an employee needed more than 90 days after the reduction in force to successfully perform the critical elements of a position. Assignments to lower priority programs or va-

· cant positions might tolerate a longer interruption.

**5.** Because this case involves the interpretation of the "undue interruption" exception of the RPL regulations, 5 C.F.R. § 330.207(d), we express no opinion as to the correctness of *Jamison*'s application of that term in the context of the RIF regulations, 5 C.F.R. § 351.701(a)(4) (1983).

**6.** We discern no abuse of discretion in the AJ's decision to exclude witnesses other than the three discussed in the text.

Catlett before it had even been formally established. Therefore, there is a colorable basis for Chudson's contention that Catlett had been preselected by Devaney and that Devaney had given Chudson only a perfunctory interview in order to comply with agency rules with no intention of ever considering him for the position. West and Kern both had personal knowledge of the selection process at issue as a result of their direct participation and their testimony would be relevant. Under these circumstances, Chudson should have been permitted to elicit the testimony of these witnesses in an effort to support his contention. We are convinced that the AJ abused her discretion in excluding these witnesses.

 Another one of the nine witnesses excluded by the AJ was Thomas T. Sheehan, the Assistant Inspector General for Investigations of the Department of the Interior. Sheehan was offered by Chudson as an expert witness "regarding the hiring, training, and qualifications of Federal supervisory criminal investigators" and, specifically, his testimony was expected to prove that "based on [Chudson's] qualifications and the job for which he was considered for [sic], there would not have been 'undue interruption' to the agency if [Chudson] had been placed in the GM–14 position in question." Chudson argued to the AJ that Sheehan's testimony was necessary to "refute the expected testimony of agency witness Earl Devaney, the selecting official, regarding the lack of qualifications of [Chudson] for the position in question." We agree with Chudson that Sheehan's testimony should have been admitted.

Sheehan's experience would clearly qualify him as an expert with respect to the hiring, training and qualifications for the position of "Supervisory Criminal Investigator" at his agency, the Department of the Interior. While the criteria for the position of the same name at EPA are somewhat different, the record demonstrates the positions are not so different as to render Sheehan's testimony irrelevant. The title "Supervisory Criminal

Investigator" is used at agencies other than EPA for similar positions; Catlett, for example, was a Supervisory Criminal Investigator at Treasury at the time he was under consideration for the position at issue. Furthermore, the fact that EPA chose to go outside the agency to fill the position tends to establish that the requirements of the position are not unique to EPA. Thus Sheehan's testimony is at least relevant to the issue of the qualifications required of a "Supervisory Criminal Investigator."

While the relevancy of Sheehan's testimony alone does not warrant its admission, other circumstances in this case persuade us his testimony should have been admitted. Devaney, the person who both created and filled the position at issue, was EPA's witness on both the position qualifications and the reasons why Chudson's selection would have been an "undue interruption" to the agency. As discussed above, Chudson had a colorable basis to suspect that Devaney was biased in favor of hiring Catlett. Yet the only testimony permitted by the AJ in rebuttal of Devaney was Chudson's own testimony. The result was to make Devaney's testimony on the position requirements, and in turn on whether a person of Chudson's qualifications would cause an undue interruption, virtually unassailable. In foreseeing this result, Chudson offered the testimony of Sheehan. Accordingly, on the facts of this case, we conclude the AJ abused her discretion in excluding the testimony of Sheehan.

In summary, we conclude that the AJ properly interpreted the RPL regulations, including the "undue interruption" exception, but that the AJ improperly excluded the testimony of witnesses West, Kern, and Sheehan. This case is remanded to the board for further proceedings in accordance with this decision.[7]

No costs.

*VACATED* and *REMANDED.*

---

7. We have considered Chudson's appeal of the AJ's determination that Chudson failed to prove that the EPA's action was taken in reprisal of Chudson's whistleblowing activity, as well as his other bases for appeal, and do not find that they have merit.