HARDY V WALSH MANNING
ERRATA: SEPTEMBER 25, 2003

STRAUB, *Circuit Judge*, dissenting:

By remanding to the arbitration panel for clarification as to the underlying legal basis for liability, the majority, in my most respectful view, disregards the well-settled precedent establishing our severely limited review of arbitration awards. It is precisely because arbitration is designed to provide parties with an expedited process for conclusively resolving their disputes, that judicial review of arbitration awards is so narrow. *See Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.) ("[T]he court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated."), *cert. denied*, 363 U.S. 843 (1960). Accordingly, I dissent.

While the majority fully recognizes that substantial deference must be given to the arbitrator's finding of liability under the governing manifest disregard standard, it fails to acknowledge that equal deference must be accorded in interpreting the arbitration award itself. As this Court has recently reaffirmed, "where an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003).[1] Thus, mere ambiguity in the award itself is not a basis for denying

---

[1] The majority notes that *Duferco* is "easily distinguishable" on its facts. While that may be so, the fundamental legal principles articulated in the opinion are nonetheless relevant.

1

confirmation, so long as the award can be interpreted as having a colorable factual or legal basis. *See*, *e.g.*, *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 213 n.8 (2d Cir. 2002) ("[W]here the arbitral tribunal has handed down an opinion open to more than one possible reading, we will confirm the award so long as, under one of these readings, the judgment rests upon a colorable interpretation of law."). Moreover, in interpreting an arbitration award, deference mandates that "we look only to *plausible* readings of the award, and not to *probable* readings of it." *Duferco*, 333 F.3d at 392 (emphasis added). Our goal, then, is not to discern the actual subjective intent of the arbitration panel, but only to determine if the award can be sustained under any plausible reading.[2] *See id.* (noting an arbitration award need not be construed to reflect the arguments originally made before the arbitration panel).

Although the majority suggests that this is somehow an extraordinary case, we are presented at most with an arbitration award that is ambiguous and susceptible of more than one plausible reading. Because the award need not be read as stating that respondeat superior is the sole basis for Skelly's primary liability, affirmance is required under the established standard of this Circuit. Even if the majority is correct that there is no ambiguity, and the award must be

---

[2] By consenting to arbitration, the parties also consent to restricted judicial review with the full awareness that the arbitration award may be confirmed even if there is substantial ambiguity or doubt as to the arbitrator's reasoning or findings. *See Klumpe v. IBP, Inc.*, 309 F.3d 279, 285 (5th Cir. 2002) ("By contracting for arbitration, [i]t is presumed that the parties intended to relinquish their right to appeal the merits of the dispute . . . .") (internal quotation marks omitted).

"To interfere with this process" by demanding a clarity of decision which the arbitrator has no obligation to provide "would frustrate the intent of the parties, and thwart the usefulness of arbitration, making it 'the commencement, not the end, of litigation.'" *Duferco*, 333 F.3d at 389 (quoting *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 349 (1854)).

read as erroneously holding Skelly liable under the principles of respondeat superior, then the appropriate remedy is to vacate the judgment of the District Court and remand for vacatur of the arbitration award. To suggest that we may remand for clarification despite finding that the arbitrator has manifestly disregarded the law has little support in prior precedent. Indeed, such a rule fatally frustrates the very goals which arbitration seeks to advance: the efficient resolution of disputes and the avoidance of prolonged expensive litigation.

## I.

In this case, the disputed portion of the arbitrators' decision simply states: "Walsh Manning and Skelly be and hereby are jointly and severally liable . . . based upon the principles of respondeat superior." The majority's interpretation, while conceivable, ignores the fact that the critical phrase "based upon the principles of respondeat superior" may simply explain the basis for Walsh Manning's joint and several liability, without referring to the basis for Skelly's primary liability. Indeed, the phrase may indicate Walsh Manning's liability for *Skelly's* actions, not just Cassese's wrongful conduct, based upon the theory of respondeat superior. In other words, the award may specify the form of liability, joint and several, while remaining completely silent as to the underlying claims on which Skelly was actually found liable.

Not only is this a *plausible* interpretation of the decision, but also a completely *probable* one, for Hardy presented substantial evidence during the arbitration hearing that Skelly, who was Cassese's direct supervisor, failed to properly supervise Cassese, that Skelly was personally aware of Cassese's unauthorized trading, and that Skelly violated federal securities laws by engaging in direct market manipulation. In addition, as the majority points out, Hardy did not

3

argue that Skelly faced direct liability on the basis of respondeat superior in his post-hearing brief, an argument, which nonetheless, Skelly directly refuted in his opposing brief. Finally, although Walsh Manning and Skelly did request that the Panel specify the damages awarded as to each particular claim for indemnification purposes, arbitrators have no obligation to provide such explanations for their decisions. *See, e.g., Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 203 (1956) ("Arbitrators . . . need not give their reasons for their results . . . ."); *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972) ("[T]he Supreme Court has made it clear that there is no general requirement that arbitrators explain the reasons for their award."). Thus, the Panel could indicate the basis for finding joint and several liability without further clarifying the claims on which it found primary liability. Although the majority's reading of the award would have great force in a context where the decision-maker is required to state the grounds for its decision, such is not the case in the arbitration context. Accordingly, we cannot simply assume that because the Panel mentioned respondeat superior in the context of finding joint and several liability, that respondeat superior must therefore be, by elimination, the only possible basis for primary liability against Skelly.[3]

        As the majority notes, we are bound to review the facts as they have been determined by the arbitrator. In this case, however, the Panel simply stated its final decision in one sentence; it

_____

[3] For example, if the award read: "We find Skelly liable for engaging in market manipulation and for making fraudulent misrepresentations. Respondents Walsh Manning and Skelly be and hereby are jointly and severally liable for and shall pay Hardy compensatory damages," the majority would confirm the award. Yet the Panel has no obligation to give the type of explanation offered in the first sentence. Thus, we cannot logically infer that the absence of such an explanation indicates that the Panel reached a fundamentally erroneous conclusion of law.

did not make explicit findings of fact, nor did it outline its legal reasoning. At most the Panel's decision is ambiguous. However, as Hardy presented ample evidence supporting Skelly's independent liability under a number of theories, and since none of these theories was explicitly rejected by the Panel, it is impossible to sustain Skelly's contention that the only plausible reading of the arbitration award is that he was held liable solely, and erroneously, on a theory of respondeat superior.

## II.

In addition, by remanding the case to the arbitration panel for further clarification, the majority suggests that the real problem with the award is not an erroneous application of law, but instead a lack of certainty as to the grounds for the arbitration decision. Because "[w]e are obliged to give the arbitral judgment the most liberal reading possible," *Westerbeke*, 304 F.3d at 212 n.8, and to uphold ambiguous awards that can plausibly be read to have a colorable legal justification, *see Duferco*, 333 F.3d at 390, such lack of certainty does not bar confirmation. While it may be tempting to remand to ensure that no actual error took place, to do so defies the commercial expectations of the parties and ignores the deference we must exercise in reviewing arbitration awards.

Moreover, if the award is in manifest disregard of the law, what purpose could be served by a remand? The majority suggests that vacating an arbitration award requires "more than a mistake of law," *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002), but that is simply a statement of the manifest disregard standard itself, not an additional threshold for vacating the award where manifest disregard has been demonstrated.

5

Although we have stated that reviewing courts "may remand awards to arbitrators to clarify the meaning or effect of an award," *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 894 (2d Cir. 1985) (per curiam), such remand is appropriate "so that the court will know exactly what it is being asked to enforce." *Americas Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir. 1985); *see also New York Bus Tours, Inc. v. Kheel*, 864 F.2d 9, 12 (2d Cir. 1988) ("When an arbitration award provides no clear instruction as to how a court asked to enforce the award should proceed, the court should remand to the arbitrator for guidance."); *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3d Cir. 1991) ("[T]he limited purpose of such a remand . . . serves the practical need for the district court to ascertain the intention of the arbitrators so that the award can be enforced . . . ."). Here, the majority would expand the limited circumstances in which remand is warranted to encompass a lack of clarity in the arbitrator's finding of liability itself — a step which would clearly interfere with the arbitral process and directly contradict our prior precedent which holds that an ambiguous award may be confirmed, so long as any plausible reading of the award is legally sustainable. *See Duferco*, 333 F.3d at 390; *Westerbeke*, 304 F.3d at 212-13 n.8.

### III.

In sum, in "wish[ing] for more clarity," the majority's decision overlooks our limited role in reviewing arbitration decisions and encourages the very type of protracted litigation that arbitration seeks to avoid.

For all of the foregoing reasons, I respectfully dissent and would affirm the decision of the District Court.