# United States Court of Appeals for the Federal Circuit

---

**STEVEN OLIVA,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2023-2331

---

Petition for review of the Merit Systems Protection Board in No. DA-0752-16-0338-I-1.

---

Decided: May 7, 2026

---

JAD H. KHAZEM, Covington & Burling LLP, Washington, DC, argued for petitioner. Also represented by RICHARD L. RAINEY.

DOUGLAS GLENN EDELSCHICK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, YAAKOV ROTH; TYRUS WILLIAM MORGAN, Office of General Counsel, Department of Veterans Affairs, New Orleans, LA.

---

Before CHEN, BRYSON, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

Steven Oliva petitions for review of a Merit Systems Protection Board ("Board") final order, which denied his petition for review and affirmed the administrative judge's initial decision. *Oliva v. Dep't of Veterans Affs.*, No. DA-0752-16-0338-I-1, 2023 WL 4138713, at *1 (M.S.P.B. June 22, 2023) ("*Final Order*"); *Oliva v. Dep't of Veterans Affs.*, No. DA-0752-16-0338-I-1, 2017 WL 3594506 (M.S.P.B. Aug. 18, 2017) ("*Initial Decision*").[1]  For the reasons discussed below, we affirm.

## I.  BACKGROUND

On September 23, 2012, Mr. Oliva was appointed as a Program Manager with the Department of Veterans Affairs ("VA") Health Resource Center ("HRC") and was based in the Waco, Texas office. *Initial Decision* at 2; App'x 71.  In October 2014, HRC Director Matthew Eitutis reassigned Mr. Oliva to serve as an Associate Director for Contact Management.  *Initial Decision* at 2; App'x 71; App'x 639–40.  In this role, Mr. Oliva oversaw staff members in both Waco, Texas, and Topeka, Kansas.  App'x 71.

On December 30, 2014, Mr. Oliva emailed Mr. Eitutis and HRC Deputy Director, Rebecca Medved, contending that Mr. Eitutis pre-selected a Waco employee for a promotion. *Initial Decision* at 2; App'x 135.  In December 2014, Mr. Oliva also challenged the process that Mr. Eitutis had used to solicit and select staff for quality step increases. *Initial Decision* at 2.

Following Mr. Oliva's December 2014 criticisms of Mr. Eitutis, the VA reprimanded Mr. Oliva on January 9,

---

[1]    Citations in this opinion are to the pagination in the version of the *Initial Decision* in the Appendix.  *See* App'x 15–70.

2015, charging him with "Inappropriate Conduct." *Initial Decision* at 2; App'x 134. Subsequently, Mr. Oliva filed a whistleblower complaint with the Office of Special Counsel ("OSC"), exhausted his administrative remedies before the OSC, and filed two individual right of action ("IRA") appeals.[2] *Initial Decision* at 2, 35.

Several employees alleged that Mr. Oliva had made inappropriate comments, engaged in harassment, and created a hostile work environment. *See* App'x 239–46. The VA appointed Dr. Michael Russell to chair the Administrative Investigation Board ("AIB") investigation into Mr. Oliva. App'x 300–01 at 5:1–6:21; App'x 247. The AIB stated that there was "little doubt that there were lapses in professionalism which a reasonable person would feel contributed to a hostile work environment." App'x 245; *see also* App'x 247–54 (supplemental memo from the convening authority). Upon receiving the AIB's findings, Elizabeth Johnson, the Acting Director of the HRC, proposed removal of Mr. Oliva based on a charge of inappropriate conduct. *Initial Decision* at 3; App'x 255–58. The deciding official, after receiving a five-hour oral response from Mr. Oliva, sustained the charge and removed Mr. Oliva from his job. *Initial Decision* at 3, 61; App'x 287–89.

On August 18, 2017, the administrative judge affirmed the VA's removal of Mr. Oliva. *Initial Decision* at 1–2. The administrative judge sustained the VA's charge of inappropriate conduct, determining that the VA had proven its charge and the underlying specifications by a

---

[2]    Mr. Oliva successfully filed another IRA appeal, which is not at issue in this appeal, asserting that the VA "took personnel actions against him in retaliation for perceived activity protected by the" Whistleblower Protection Act and the Whistleblower Protection Enhancement Act. *Oliva v. Dep't of Veterans Affs.*, No. DA-1221-17-0225-W-1, 2017 WL 5569372 (M.S.P.B. Nov. 13, 2017).

preponderance of the evidence. *Initial Decision* at 4–30. Regarding Mr. Oliva's first affirmative defense of whistleblower retaliation, the administrative judge determined that Mr. Oliva "engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i) because [his] prior IRA appeals sought to remedy a violation of 5 U.S.C. § 2302(b)(8)." *Id.* at 37; *see id.* at 31–38. However, the administrative judge determined that the VA proved "by clear and convincing evidence that it had strong evidence to support the removal action." *Id.* at 39; *see id.* at 40–41. Regarding Mr. Oliva's second affirmative defense of harmful procedural error, the administrative judge concluded that Mr. Oliva failed to prove that the VA committed harmful error. *Initial Decision* at 41–45. Moreover, the administrative judge determined that removal "was within the tolerable limits of reasonableness for the proven charge." *Initial Decision* at 49.

Mr. Oliva petitioned the Board for review of the administrative judge's initial decision. *Final Order* at *1. On June 22, 2023, the Board denied Mr. Oliva's petition for review and affirmed the administrative judge's initial decision. *Id.* The Board "discern[ed] no basis for disturbing the administrative judge's well-reasoned findings regarding the charge or [Mr. Oliva's] affirmative defenses of discrimination and equal employment opportunity" reprisal. *Id.* Furthermore, the Board agreed with the administrative judge that Mr. Oliva failed to establish his affirmative defenses of whistleblower reprisal and harmful error. *Id.*

Mr. Oliva timely petitioned for review in this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II.  STANDARD OF REVIEW

We will set aside the Board's decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."     5 U.S.C.

§ 7703(c); *Mouton-Miller v. Merit Sys. Prot. Bd.*, 985 F.3d 864, 868 (Fed Cir. 2021). We review the Board's conclusions of law de novo and the Board's factual findings for substantial evidence. *Brenner v. Dep't of Veterans Affs.*, 990 F.3d 1313, 1322 (Fed. Cir. 2021). "We review the [B]oard's decision to exclude witnesses under an abuse of discretion standard." *Chudson v. EPA*, 17 F.3d 380, 384 (Fed. Cir. 1994).

### III. DISCUSSION

Mr. Oliva makes two primary arguments: (1) the Board erred in determining that the government proved by clear and convincing evidence that it would have removed Mr. Oliva absent his whistleblowing, Petitioner's Br. 19–47; and (2) the Board erred in overruling Mr. Oliva's harmful procedural error defense, *id.* at 47–57. We address each argument in turn.

### A.

"Analysis of a whistleblower defense takes place within a burden shifting scheme." *Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1367 (Fed. Cir. 2012). "[T]he former employee must prove by a preponderance of the evidence that he or she made a protected disclosure under § 2302(b)(8) that was a contributing factor to the employee's termination." *Id.* "If the employee establishes this *prima facie* case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure,'" *id.* (quoting 5 U.S.C. § 1221(e)), "which we sometimes refer to as a showing of 'independent causation.'" *Miller v. Dep't of Just.*, 842 F.3d 1252, 1257 (Fed. Cir. 2016) (internal citation omitted). In evaluating whether the government has successfully rebutted an employee's prima facie case, we look to the factors set forth in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999):

> [T]he strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

"To be clear, *Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor." *Whitmore*, 680 F.3d at 1374. Therefore, we "consider the record as a whole and balance the *Carr* factors to determine whether substantial evidence supports the Board's finding that the [agency] clearly and convincingly proved it would have removed [the employee] independent of his protected disclosures." *Robinson v. Dep't of Veterans Affs.*, 923 F.3d 1004, 1019 (Fed. Cir. 2019).

Mr. Oliva makes two arguments with respect to this issue: "(1) the Board failed to properly apply the required *Carr* analysis," and "(2) under a proper *Carr* analysis that accounts for all relevant evidence, reversal or, at minimum, vacatur is required." Petitioner's Br. 19. As explained below, we disagree.

i.

Contrary to Mr. Oliva's argument, the Board did not need to re-analyze the *Carr* factors because the initial decision became the Board's final decision when the Board denied Mr. Oliva's petition for review. *Final Order* at *1 ("[W]e DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision."); 5 C.F.R. § 1201.113(b) ("If the Board denies all petitions for review, the initial decision will become final when the Board issues its last decision denying a petition for review."); *see Baker v. Dep't of Health & Hum. Servs.*, 912 F.2d 1448, 1456 (Fed. Cir. 1990) ("The Board may

adopt the administrative judge's decision or modify it."). The administrative judge substantively analyzed all three *Carr* factors in the initial decision, *see Initial Decision* at 38–41, so the Board had no obligation to "reinvent the wheel," *Gonzales v. Def. Logistics Agency*, 772 F.2d 887, 889 (Fed. Cir. 1985); *see In re Cree, Inc.*, 818 F.3d 694, 698 n.2 (Fed. Cir. 2016) ("It is commonplace in administrative law for a reviewing body within an agency to adopt a fact-finding body's findings. On judicial review, the adopted material is treated as if it were part of the reviewing body's opinion."). Therefore, the Board was not required to reanalyze the *Carr* factors.

ii.

Substantial evidence supports the Board's analysis of the *Carr* factors.

> The first *Carr* factor is "the strength of the agency's evidence in support of its personnel action." *Carr*, 185 F.3d at 1323. We do not focus our review of this *Carr* factor on whether the agency has put forward some evidence purporting to show independent causation, but instead we focus on whether such evidence is strong.

*Miller*, 842 F.3d at 1259.

Substantial evidence supports the Board's analysis of the first *Carr* factor. "[P]roof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge." *Burroughs v. Dep't of Army*, 918 F.2d 170, 172 (Fed. Cir. 1990). The administrative judge walked through extensive testimony regarding inappropriate conduct, finding that each of ten specifications was supported based largely on credibility determinations that are virtually unreviewable on appeal. *Initial Decision* at 4–30; *see Chambers v. Dep't of Interior*, 515 F.3d 1362, 1370 (Fed. Cir. 2008). On appeal, Mr. Oliva does not contest that substantial evidence supports the administrative judge's decision

that each of the ten specifications was proved by a preponderance of the evidence. *See generally* Petitioner's Br. Accordingly, because substantial evidence supports finding that Mr. Oliva engaged in inappropriate conduct, the first *Carr* factor supports the VA's decision to remove Mr. Oliva.

Mr. Oliva makes two principal arguments with respect to the first *Carr* factor: the Board "(i) disregarded material impeachment evidence and refused to hear testimony from the lead investigator, in violation of *Whitmore*" and "(ii) failed to account for the lack of corroboration as to accuser testimony and also failed to consider Mr. Oliva's strong character and performance evidence, in violation of *Miller*." Petitioner's Br. 4; *see generally id.* at 23–40. Each of these arguments fails to persuade us.

In *Whitmore*, the petitioner requested the administrative judge's approval to call certain witnesses to show bias on the part of the investigator and other officials and to provide proof that the stated reasons for his removal "were a mere pretext for his being removed due to his whistleblowing disclosures." 680 F.3d at 1363. The administrative judge excluded these witnesses on relevance grounds, "stating that the witnesses 'are not material to the central issue in this matter, but rather have only peripheral relevance.'" *Id.* at 1368–69 (citation omitted). We concluded that the administrative judge abused her discretion because the petitioner "was entitled to introduce testimony calling into question the veracity and reliability of [the investigator's] report and the interviewees' statements therein, since at least some evidence in the record suggest[ed] that [the] report was relied on . . . to remove [the petitioner]." *Id.* at 1369. Accordingly, we held "that it is an abuse of discretion to categorically exclude all witnesses offered to testify as to evidence under the *Carr* factors on relevance grounds" because "[d]oing so prevents whistleblowers from effectively presenting their defenses, and leaves only the agency's side of the case in play." *Id.* at 1370. We further concluded that the administrative

judge erred by discussing "virtually none of the key evidence" relating to petitioner's theory, leaving the court unable to "meaningfully evaluate whether substantial evidence exists to support the AJ's conclusions." *Id.* at 1375–76. Mr. Oliva contends that each of these errors—excluding key witness testimony and failing to discuss much of the pertinent evidence to petitioner's theory—occurred in this case. *See* Petitioner's Br. 23–36.

First, we disagree with Mr. Oliva's argument that the administrative judge violated *Whitmore* by excluding the testimony of the AIB lead investigator, Dr. Russell. Petitioner's Br. 39–40. *Whitmore* does not stand for the proposition that it is *per se* an abuse of discretion for an administrative judge to exclude an investigator and the witnesses interviewed during an investigation from testifying. Rather, the court held that "it is an abuse of discretion to categorically exclude *all* witnesses offered to testify as to evidence under the *Carr* factors on relevance grounds." *Whitmore*, 680 F.3d at 1370 (emphasis added); *see also Beck v. Dep't of Navy*, 997 F.3d 1171, 1185 (Fed. Cir. 2021) (interpreting *Whitmore* to hold that "'it is an abuse of discretion to categorically exclude all witnesses' who may be relevant to a plaintiff's case" (citing *id.*)). So long as a whistleblower can "effectively present[ ] [his] defenses," *Whitmore*, 680 F.3d at 1370, a "determination to allow or exclude witness testimony is within the sound discretion of the administrative judge." *Guise v. Dep't of Just.*, 330 F.3d 1376, 1379 (Fed. Cir. 2003).

The administrative judge's decision to exclude testimony from Dr. Russell in this case was within her discretion. As an initial matter, the administrative judge excluded Dr. Russell at Mr. Oliva's request. App'x 1028. At the hearing, the administrative judge agreed with Mr. Oliva that Dr. Russell's testimony was not relevant to the issues before the Board and withdrew the previous approval of Dr. Russell as a witness. App'x 343. Thus, Mr. Oliva has waived any argument that the

administrative judge erred in excluding Dr. Russell's testi-mony. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020) ("Waiver is the intentional relinquishment or abandonment of a known right." (cleaned up)).  Even if Mr. Oliva had not waived his arguments regarding Dr. Russell, they would be unpersuasive.  Mr. Oliva had the full opportunity to present his case, including introduc-ing the deposition transcript of Dr. Russell.  App'x 708. The administrative judge also approved 15 other witnesses for Mr. Oliva.    App'x 1022;  App'x 1028.    On appeal, Mr. Oliva has not shown that the administrative judge's exclusion of Dr. Russell was tantamount to the one-sided exclusion of a petitioner's witnesses in *Whitmore* or other-wise prevented him from presenting a full defense.  Thus, we conclude that the administrative judge did not abuse her discretion by excluding Dr. Russell as a live witness.

Second, we disagree with Mr. Oliva's argument that the administrative judge violated *Whitmore* by disregard-ing impeachment evidence.  Mr. Oliva's arguments regard-ing impeachment evidence invite us to re-weigh evidence and disregard the administrative judge's credibility deter-minations.  The administrative judge considered the total-ity of the evidence, *Initial Decision* at 39, and was not required to explicitly explain why she rejected each piece of evidence.  *Lowder v. Dep't of Homeland Sec.*, 504 F.3d 1378, 1383 (Fed. Cir. 2007); *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986) ("We presume that a fact finder reviews all the evidence presented unless he explic-itly expresses otherwise.").  The administrative judge ex-tensively explained why she found each testifying witness credible, noting consistency with prior statements, de-meanor, and lack of motive to lie.  *See, e.g.*, *Initial Decision* at 7–9, 11, 13, 15, 18.  Indeed, the administrative judge considered and rejected several of the pieces of material ev-idence that Mr. Oliva contends she overlooked.  *Compare* Petitioner's Br. 33 ("Ms. Redd (as well as Ms. Haas) had a motive to retaliate against Mr. Oliva.  Both were based in

Topeka while working at the HRC, and both were members of the 'group' that poorly received Mr. Oliva's praise of Waco's policies and practices and his criticism of and efforts to reform the Topeka office."), *with Initial Decision* at 8 ("I have considered the appellant's contention that the allegations set forth in the agency's proposal resulted [from] a conspiracy among the Topeka employees and that [Ms.] Redd failed to promptly report the comments."). Thus, unlike in *Whitmore*, the administrative judge did not "manifestly ignore[ ], overlook[ ], or exclude[ ]" the "considerable countervailing evidence" in this case. 680 F.3d at 1376.

Mr. Oliva next argues that the Board "failed to account for the lack of corroboration as to accuser testimony." Petitioner's Br. 4; *see also id.* at 34. We have held that, where a single witness's testimony "was the only evidence supporting" the government's "unusual" theory, "the lack of corroboration, the dearth of documents, emails, or records, and even the lack of detail in [the testimony]" rendered it so unreliable that "no reasonable factfinder could find [the petitioner's direct supervisor's] conclusory testimony . . . to be strong evidence of independent causation." *Miller*, 842 F.3d at 1259–61. However, we carefully cabined our opinion, clarifying that "we do not hold today that testimony *must* be corroborated to support a showing of independent causation." *Id.* at 1261 (emphasis added). This case is unlike *Miller*. For every specification, the administrative judge found that numerous witnesses all credibly testified to Mr. Oliva's inappropriate conduct, and Ms. Redd, Ms. Howley, and Shirley Haas, the Deputy Associate Director of Contact Management for the HRC, had corroborating evidence for their testimony.[3] *See Initial Decision* at 4–40; *see, e.g., id.* at 11 (relying on the

---

[3]   Ms. Haas "testified during the AIB but not at the hearing." *Initial Decision* at 9.

"corroborating testimonies of [Ms.] Redd and [Ms.] Haas."); *id.* at 13 (for Ms. Redd, relying on "contemporaneous notes of the conversation"); *id.* at 21 ("[Ms. Howley's] testimony is also corroborated by her [report] and [Ms.] Redd's testimony."); *see also id.* at 15 (finding Mr. Oliva's testimony not credible because he "provided contradictory versions of events"). Thus, rather than forming the basis for a quantum of proof, the uncorroborated testimony from some witnesses were among many pieces of evidence, which together provide strong evidence of independent causation. Substantial evidence supports the administrative judge's conclusion that *Carr* factor one supports the government.

The second *Carr* factor is "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision." *Carr*, 185 F.3d at 1323. When applying this factor, "the Board will consider any motive to retaliate on the part of the agency official who ordered the action, as well as any motive to retaliate on the part of other agency officials who influenced the decision." *Whitmore*, 680 F.3d at 1371 (internal quotation marks and citation omitted). Here, the administrative judge recognized that the deciding official, Mr. Isaacks, and the proposing official, Ms. Johnson, credibly testified that they were unaware of Mr. Oliva's prior "whistleblowing activity" and thus could not have been motivated to retaliate based on that activity. *Initial Decision* at 40. Furthermore, the administrative judge recognized that Mr. Eitutis had a motive to retaliate against Mr. Oliva but concluded that once Ms. Johnson was assigned as the proposing official, Mr. Eitutis was no longer involved in the action against Mr. Oliva. *Id.* With respect to Ms. Johnson, Ms. Medved, HRC Deputy Director, and Ms. Mardon,  HRC Chief Business Officer, the administrative judge determined that any motive is weak considering the totality of the evidence, and nothing in the record established that Mr. Eitutis exerted any control over them with respect to the action against Mr. Oliva. *Id.*

Regarding *Carr* factor two, Mr. Oliva argues the Board failed to properly address a January 9, 2015, reprimand.[4] Petitioner's Br. 43–45. According to Mr. Oliva, Ms. Johnson received copies of prior disciplinary actions, so she would have been aware of Mr. Oliva's whistleblowing history. Petitioner's Br. 44–45. Ms. Johnson's broad statement that she received "information regarding prior disciplinary actions," App'x 383, does not inherently contradict her statement that she was unaware of any whistleblowing activity. App'x 407–08. Mr. Oliva's argument ultimately amounts to criticizing the Board for not discussing each piece of evidence. However, the fact that the Board did not address every piece of evidence does not mean that the evidence was not considered. *Medtronic*, 789 F.2d at 906. Substantial evidence supports the Board's conclusion that *Carr* factor two favors the government.

With respect to the third *Carr* factor, the Board considers "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are

---

[4]    In the January 9, 2015 reprimand, Ms. Medved stated that Mr. Oliva's "allegations regarding the preselection of [an employee] are without merit, can be perceived as slanderous, and negatively impact our organization." App'x 134. On November 13, 2017, in a different IRA appeal, the administrative judge ordered the VA to cancel this reprimand and expunge all reference to it from Mr. Oliva's personnel file. *Oliva v. Dep't of Veterans Affs.*, No. DA-1221-17-0225-W-1, 2017 WL 5569372 (M.S.P.B. Nov. 13, 2017). Specifically, the administrative judge concluded that Mr. Oliva's perceived whistleblowing activity "was a contributing factor in issuing the January 9, 2015 letter of reprimand," and the VA had failed to prove that it would have issued the letter of reprimand "if it had not perceived [Mr. Oliva] as a whistleblower." *Id.*

otherwise similarly situated." *Carr*, 185 F.3d at 1323. Mr. Oliva argues that "the [g]overnment made no effort to show that the treatment of Mr. Oliva [was] comparable to that of similarly situated employees who are not whistle-blowers." Petitioner's Br. 45. Mr. Oliva argues that "this 'absence of relevant comparator evidence' means that 'the third *Carr* factor cannot favor the government.'" *Id.* (quoting *Siler v. EPA*, 908 F.3d 1291, 1299 (Fed. Cir. 2018)). Although the absence of evidence regarding similarly situated employees cannot favor the government, "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore*, 680 F.3d at 1374; *Rickel v. Dep't of the Navy*, 31 F.4th 1358, 1366 (Fed. Cir. 2022) ("Because the agency need not prove every factor weighs in its favor, the absence of evidence related to *Carr* factor three is not fatal to the agency."). Here, the administrative judge determined that "[t]he record does not contain any evidence that would suggest that the agency failed to take action against other employees who had engaged in similar misconduct but who had not engaged in protected whistleblowing activity." *Initial Decision* at 40–41. Accordingly, the administrative judge effectively removed *Carr* factor three from the analysis given there was no evidence in the record to construe this factor in favor of either party.

Considering the record as a whole and balancing the *Carr* factors, substantial evidence supports the Board's finding that the VA clearly and convincingly proved it would have removed Mr. Oliva independent of his protected disclosures. *See Robinson*, 923 F.3d at 1019.

## B.

We next address whether the Board erred in overruling Mr. Oliva's harmful procedural error defense. *See* Petitioner's Br. 47–57. Mr. Oliva contends that the agency committed a litany of errors during the AIB investigation, including declining to speak with character witnesses,

failing to speak with Mr. Oliva first, and declining to interview Mr. Oliva's proposed witnesses. *See id.* at 51–57 (discussing conduct by the AIB). The Board concluded that Mr. Oliva had failed to establish any harmful procedural error because his argument "that the agency would not have concluded that he engaged in misconduct if the AIB had taken additional investigatory measures" was "not persuasive in light of the agency proving its case . . . before the Board." *Final Order* at *4. On appeal, Mr. Oliva argues that: (1) "the Board failed to apply the correct legal standard to assess Mr. Oliva's harmful procedural error defense," Petitioner's Br. 48–50 (cleaned up); and (2) "the Board's harmless error ruling lacks substantial eviden[ce] support," *id.* at 51–57 (cleaned up). We address each argument in turn.

i.

The Board may not sustain the agency's decision "if the employee or applicant for employment shows harmful error in the application of the agency's procedures in arriving at such decision." 5 U.S.C. § 7701(c)(2)(A); 5 C.F.R. § 1201.56(c)(1). Harmful error is "[e]rror by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." 5 C.F.R. § 1201.4(r). The focus of this analysis "is the agency and whether the agency is likely to have reached a different conclusion in the absence of the procedural error." *Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1282 (Fed. Cir. 2011) (emphasis omitted).

Mr. Oliva argues that the Board failed to apply the correct legal standard because the Board's decision "centered on the perceived merits of the case before the *Board* rather than on the likely impact of the procedural errors on the *agency*." Petitioner's Br. 48. We have previously stated that the Board may not remedy a procedural error "by performing an independent analysis" to determine whether an

agency action was within "the tolerable limits of reasonableness." *Ward*, 634 F.3d at 1282 (internal citation omitted). However, we have explained that the Board may perform "a harmless error analysis," considering "whether the *agency* is likely to have reached a different conclusion in the absence of the procedural error." *Id.* In this case, the Board properly performed a harmless error analysis. It assessed the evidence and determined that it "[was] not persuasive in light of the agency proving its case . . . before the Board." *Final Order* at *4; *see id.* (citing 5 U.S.C. § 7701(c)(2)(A); 5 C.F.R. § 1201.56(c)(1); 5 C.F.R. § 1201.4(r)). In other words, given the strength of the evidence, the Board determined that it was unlikely the agency would have reached a different conclusion absent the error. We conclude that the Board did not legally err.

ii.

Mr. Oliva also argues that the Board's harmless error ruling lacks evidentiary support because the "AIB improperly excluded all character witnesses from its investigation," "imped[ed] his ability to provide a full and complete defense," and failed to "speak with the subject of the AIB first." Petitioner's Br. 51–57. Mr. Oliva contends that these errors tainted the investigation and subsequent proceedings. Substantial evidence supports the Board's conclusion otherwise.

As an initial matter, Mr. Oliva overlooks that the AIB is an investigative body, not an adjudicative body. "[W]hen governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used." *Hannah v. Larche*, 363 U.S. 420, 442 (1960). For this reason, Mr. Oliva's citations to cases involving procedural error at agency hearings or at the Board are inapposite. *See, e.g.*, Petitioner's Br. 52 (citing *Litoff v. Dep't of the Air Force*, 1994 WL 521088, at *1–2 (Fed. Cir. Sept. 26, 1994) (unpublished) (procedural error

before the Board)); *id.* at 56 (citing *Whitmore*, 680 F.3d at 1370) (same).[5]  The initial AIB investigation was not required to follow the same strict procedures that Mr. Oliva was entitled to receive, and did receive, before the agency and the Board.

To the extent that Mr. Oliva argues that flaws in the AIB investigation impeded his ability to provide a full and complete defense before the agency and the Board, *see* Petitioner's Br. 53–54, substantial evidence supports the Board's finding that this argument is unpersuasive.  Substantial evidence supports the Board's finding that before the AIB Mr. Oliva "discussed all of the documentation that he provided to the AIB and explained his position through extensive    argument."    *Initial    Decision*    at 42; App'x 219–235    (interview    transcript);    App'x 315–16 at 20:13–21:2 (Dr. Russell testifying that the AIB "carefully" reviewed documents provided by Mr. Oliva).  Before the agency, Mr. Oliva gave a five-hour oral response and was able to present contrary evidence.  *See, e.g.*, App'x 429 at 88:1–24 (Mr. Isaaks testifying that Mr. Oliva testified for five hours at his oral response meeting, where Mr. Oliva "presented a large amount of information" and "wanted to

---

[5]    For the same reason, Mr. Oliva's reliance on VA Handbook 700 for various procedures (that he contends that the AIB was required to follow) fails.  *See* Petitioner's Br. 51, 52 n.4, 53 n.5, 54–56.  The VA Handbook explains that "[b]ecause administrative investigation boards are investigative bodies and do not determine [due process] interests, such rights are inapplicable to administrative investigations.  The employee, therefore, has no 'due process' right to advance notice; or to a notice of charges, nor does the employee have a right to review or to challenge adverse evidence."  App'x 120 (Dep't of Veterans Affs., VA Handbook 0700 app. I, at I-1 (July 31, 2002)) (internal citations omitted).

walk through documents one by one"). Lastly, before the Board Mr. Oliva was able to present his full case, including calling numerous witnesses. App'x 1022. At each stage, the adjudicator determined that the evidence supported his removal. In the circumstances of this case, Mr. Oliva has not shown that the application of the procedures would have been likely to cause the agency to reach a different conclusion. *See, e.g.,* 5 C.F.R. § 1201.4(r). Substantial evidence supports the Board's rejection of Mr. Oliva's procedural error defense.

\* \* \*

While Mr. Oliva has raised a number of challenges to the Board's determination, in sum, we affirm because the Board did its job: It considered the factors and evidence, made credibility determinations, and did so while following our precedent.

## IV. CONCLUSION

We have considered Mr. Oliva's remaining arguments and find them unpersuasive. We affirm.

**AFFIRMED**

COSTS

No costs.